HASELTINE, Assignee of BIRD & MILLER GRAIN COMPANY, v. JOHN L. MESSMORE et al., Appellants.

Division Two, November 22, 1904.

1. **APPEALS: Affidavit: Remittitur.** Judgment was rendered for plaintiff, and defendants thereupon filed a motion for a new trial, on the ground of excessive damages; that motion was sustained, and a new trial ordered. Thereupon plaintiff filed a motion to set aside that order and to allow plaintiff to enter a remittitur of a part of the verdict, and this motion was sustained, the order for a new trial set aside, the remittitur entered, judgment entered for the balance of the verdict, and defendant filed his affidavit for an appeal, and three days later upon a motion made by defendant the court made an order correcting and vacating the entries theretofore made, and in lieu thereof, rendered

judgment for the amount of the verdict less the remittitur. *Held,* that, the judgments being practically the same, the affidavit of appeal could not be said to be from the first judgment only, but from the final judgment, and was, therefore, sufficient to uphold the appeal.

2. ———: **Service of Abstract: Waiver.** Where a party makes no objection to the untimely service of an abstract upon him until the hearing of the cause in the Supreme Court on the day it is set for hearing, he will be considered to have waived a more timely service.

3. **PARTIES: Joint Liability.** Unless there is a joint liability between the defendants an action cannot be maintained against them jointly.

4. **COLLUSION AND FRAUD: Action By Assignee of Fraudulent Participant.** The assignee of one partnership cannot maintain a suit against the members of that firm and the members of another firm on the ground that by reason of fraud and collusion between the two firms and its members, after the assignment, the other firm was not entitled to certain commissions for selling grain shipped to it by plaintiff's assignor, and had retained certain moneys due the assignor. The members of the firm which made the assignment are not jointly liable to the suit of the assignee, and cannot properly be joined as defendants. To permit the assignee to maintain a suit against the members of the firm in such case, would, in effect, be to permit the company to sue itself.

5. **JURISDICTION: Non-Liable Defendants.** Where two persons not jointly liable are joined as defendants, if one of them resides and is served with process in a county other than that in which the action is brought, the court acquires no jurisdiction over him.

6. ———: ———: **Waiver.** Notwithstanding a resident defendant who is not jointly liable is joined with a non-resident defendant and apparently for the purpose of maintaining the suit in the county other than that in which the non-resident resides, yet if the non-resident defendant files no plea in abatement or other plea to the jurisdiction, but appears generally at the taking of depositions and at the trial, he will be held to have waived the service of process upon him.

7. **ASSIGNEE: Right to Sue For Creditors: Statute of 1897.** The statute of 1897 (R. S. 1899, sec. 365) making an assignee in a general assignment a trustee for the benefit of creditors of his assignor and giving him power to prosecute "such actions for property" as a trustee in a deed of trust may, etc., does not empower him to maintain a suit on behalf of the assignor's cred-

itors, based on an allegation of collusion and fraud between his. assignor and the assignor's creditors in holding back and ap-- propriating to their own use, after the assignment was made,. certain moneys which it is alleged rightly were due to the as- signor. That statute authorizes the assignee to sue for the ben- efit of the assignor's creditors "for property" belonging to the: assignor, and has no application to a suit based on fraud and col- lusion.

Appeal from Jackson Circuit Court.—*Hon. Wm. B.. Teasdale,* Judge.

REVERSED.

*Hickman P. Rodgers* and *George W. Taussig* for appellants.

(1)   (a)   An imposition practiced on the court. for the purpose of obtaining jurisdiction as to persons is ineffective and will not be countenanced.   Capital City Bank v. Knox, 47 Mo. 333; Graham v. Ringo, 67 Mo. 324; Byler v. Jones, 79 Mo. 261; Christian v. Wil- liams, 111 Mo. 429.   (b)   Assignment does not carry with it title to property which assignor has previously transferred in fraud of creditors.   Burrell on- Assign- ments (6 Ed.), p. 111; Jacobi v. Jacobi, 101 Mo. 507. (2)   Where loss is pecuniary, but no evidence is given: showing its extent, the jury can allow nominal dam- ages only.   1 Sedgwick on Damages (8 Ed.), secs. 170-- 171, p. 245.

*Scarritt, Griffith & Jones* for respondent.

(1)   This record fails to show any affidavit for- appeal made or filed after the final judgment in this cause made and entered on January 8, 1902, or any affidavit for appeal directed to that judgment.   This court, therefore, is without jurisdiction of this cause on appeal.   The affidavit made and dated January 4, 1902, directed, by express reference, to the judgment.

of January 3, 1902, does not meet the requirements of the statute. R. S. 1899, secs. 806, 808; State ex rel. v. Woodson, 128 Mo. 514; Thomas v. Missouri, etc., Co., 89 Mo. App. 12; Greenwood v. Parlin & O. Co., 98 Mo. App. 407; Clelland v. Shaw, 51 Mo. 440; Schnabel v. Thomas, 92 Mo. App. 180; Brown v. Railroad, 83 Mo. 478; Lengle v. Smith, 48 Mo. 276; State v. Wooldridge, 83 Mo. 193; State v. Roscoe, 93 Mo. 140. (2)    (a) There is no error apparent upon this record in respect to the action of the trial court relative to its jurisdiction of the appealing defendants. The motion, or plea, is so defective and informal that the action of the court in overruling it can not be said to be erroneous.    (b) This motion or plea was overruled on October 13, 1900, at the October term of the court.    Neither the motion nor any evidence upon which it was submitted to the court has been preserved by a bill of exceptions and, therefore, the motion and the action of the court thereon are not before this court for review.    State v. Taylor, 134 Mo. 109; State v. Williams, 147 Mo. 14; Richardson v. Agricultural Assn., 156 Mo. 407.    (c)    The appealing defendants subjected themselves to the jurisdiction of the circuit court of Jackson county by appearing generally time and again, and by submitting their contentions to the court at the trial without ever, in any way, so far as is disclosed by this record, making any objection to the jurisdiction of the court or preserving their exceptions to the ruling of the court with respect to its jurisdiction over their persons.    (d) It is said in Kimball v. Harmon, 34 Md. 407, 6 Am. Rep. 340: "There is no doubt of the right of a plaintiff to maintain an action on the case against several for conspiring to do and actually doing some unlawful act to his damage."    And it is held that the action may be begun against a single defendant; or, if brought against several, the verdict against one defendant and in favor of the others is not necessarily erroneous. Buffalo L. Co. v. Everest, 30 Hun 588; Kimball v. Har-

mon, 34 Md. 407; Booker v. Puyear, 27 Neb. 346; Page v. Parker, 43 N. H. 363, 80 Am. Dec. 172; Laverty v. VanArsdale, 65 Pa. St. 507. A complaint alleging conspiracy has been sustained in actions the purpose of which was to defraud partnership assets and defeat claims of creditors. Mott v. Danforth, 6 Watts (Va.), 304, 31 Am. Dec. 468. (3) The power and authority of an assignee has been enlarged by the statute of 1897, so that now he stands in the shoes of the creditors of the assignor and in the shoes of a creditor having a deed of trust or a writ of attachment or execution levied upon the property in question prior to the assignment, and does not stand, as formerly, in the shoes of an assignee of the mere legal title with no more than the legal rights of the assignor. R. S. 1899, sec. 365. The authorities cited by the defendants do not militate against the plain meaning of this statute. In fact, it is intimated in Sawyer v. Printing Co., 77 Mo. App. 184, that this statute "enlarged the remedies of the assignee." The case of Jacobi v. Jacobi, 101 Mo. 507, cited by appellants, arose under an assignment made in 1883, four years before the statute we rely upon was enacted.

BURGESS, J.—In the month of January, 1897, Steele M. Bird and Frank L. Miller formed a copartnership under the firm name and style of Bird & Miller Grain Company with a capital of $450, for the purpose of engaging in the business of buying and selling grain, with offices at Kansas City, Missouri.

About six months thereafter they commenced consigning grain to the firm of Messmore, Gannett & Co., a copartnership composed of A. L. Messmore, John M. Gannett and T. B. Morton, and conducting a grain commission business at the city of St. Louis.

A large number of cars of grain were shipped by Bird & Miller Grain Company under consignment to Messmore, Gannett & Co., amounting in the aggregate

to about seven hundred and fifty cars, most of which, if not quite all, was wheat of various grades and qualities, which was sold by defendants on commission, the proceeds arising therefrom, less their commissions, being as a rule promptly remitted to Bird & Miller Grain Company.

On the eighteenth day of January, 1898, the Bird & Miller Grain Company, becoming heavily involved in debt, and being unable to meet its liabilities, made an assignment for the benefit of its creditors, and said assignee, or rather, William G. Haseltine, his duly appointed successor, instituted this suit in the circuit court of Jackson county to recover the sum of fifteen thousand dollars, alleged to rightfully belong to said company and to have been received and appropriated by defendants to their own use, after the assignment of the Bird & Miller Grain Company.

At the return term, on January 8, 1900, the defendants, Messmore, Gannett and Morton, appearing specially for that purpose, filed a motion or plea directed to the jurisdiction of the court as to them, on the ground that service of summons in the cause was obtained upon them in the city of St. Louis, and that defendants, Bird and Miller, were made parties to the suit for the sole purpose of giving the court apparent jurisdiction of the case. While this motion or plea was pending, defendant A. L. Messmore died in February, 1900. At the January term, 1900, of said court, on March 23, an order was duly entered, making John L. Messmore and William M. Scudder, executors of the estate of A. L. Messmore, deceased, parties defendant, unless they showed cause to the contrary on or before the fourth day of the next term of the court. At the April term, 1900, of said court, on April 23, an order was entered of record reviving the cause as to the defendant, A. L. Messmore, deceased, in the name of his said executors. The motion or plea to the jurisdiction,

in so far as it was directed against the original petition, was never acted on by the court.

Thereupon the plaintiff filed an amended petition wherein John L. Messmore and William M. Scudder, executors of the estate of A. L. Messmore, deceased, were named as defendants in lieu of A. L. Messmore, deceased, and which contained appropriate allegations as to the condition of the parties caused by the death of A. L. Messmore, and the consequent dissolution of the partnership which had theretofore existed between him and John M. Gannett and T. B. Morton. In other respects the charges of the petition were substantially the same as those of the original petition. The record of the court shows an entry upon the thirteenth of October, 1900, at the October term of that court, as follows: "Now the defendants refile their plea to the jurisdiction of the amended petition and said plea is by the court heard and overruled without prejudice, to which ruling of the court defendants except. Thereupon defendants are given leave of court to plead further herein." The plea or motion so refiled was the same document filed on the eighth of January, 1900, which opened with the words, "Come now the defendants, A. L. Messmore, John M. Gannett and T. B. Morton, appearing specially," etc., and is signed, "Scammon, Mead and Stubenrauch, attorneys for Messmore, Gannett & Company."

On October 17, 1900, at the same term as that last referred to, the defendants, Messmore and Scudder, executors, and Gannett and Morton appeared generally in the cause by filing a demurrer, which was based upon the sole ground that "said amended petition did not state facts sufficient to constitute a cause of action against them," which was overruled on October 20, and no exceptions were preserved to that action of the court.

On October 22, 1900, the defendant executors, and Morton and Gannett, again appeared generally by filing an answer in which they admitted that A. L. Messmore,

T. B. Morton and John M. Gannett were partners as alleged in the amended petition, and denied all other allegations in the petition.

The original defendants, Messmore, Gannett and Morton, appeared unconditionally by counsel at the taking of depositions on the part of the plaintiff at Kansas City on January 18, 1900, at which time the depositions of the defendants Bird & Miller were taken. And all the appealing defendants appeared unconditionally by counsel at the taking of depositions in this cause in St. Louis on September 24, 1900, at which time the deposition of defendant Morton was taken, and at which time plaintiff attempted to take the deposition of defendant Gannett and of the bookkeeper, Ellis, of the firm of Messmore, Gannett & Morton. All the appealing defendants appeared generally by counsel in this cause in open court in resisting the applications to produce papers preliminary to the trial.

The cause came regularly to trial on May 10, 1901, at the April term of the court, where the appealing defendants appeared generally by counsel and defended the action.

The petition was in two counts, but the first count was withdrawn by the plaintiff. The second count of the petition upon which the trial was had is as follows:

"Plaintiff, for a second cause of action, states that he is the duly appointed, qualified and acting assignee of the Bird & Miller Grain Company, and that said Bird & Miller Grain Company was at all times herein referred to a copartnership engaged in the business, at Kansas City, Missouri, of buying and selling grain for its own account, and of buying and selling grain for others on commission, and was composed of Steele M. Bird and Frank L. Miller; that the defendants, A. L. Messmore, Gannett and Morton were, at all the times herein referred to, partners engaged at St. Louis, Missouri, in buying and selling grain on their own account,

and of selling grain for other persons on commission, under the style of Messmore, Gannett & Company; that A. L. Messmore has, since the institution of this suit, died, and John L. Messmore and William Scudder are his executors; that the said defendants composing the firm of Messmore, Gannett & Company, on or about the first day of August, 1897, entered into an agreement with the said Bird & Miller Grain Company, whereby it was understood and agreed that the said Bird & Miller Grain Company should buy grain upon the market at Kansas City, or elsewhere, and consign and ship the same to Messmore, Gannett & Company, at St. Louis, and that said Messmore, Gannett & Company should sell the same on the market at St. Louis, or elsewhere, at the highest market price, and faithfully account to the said Bird & Miller Grain Company for all grain so sold, and remit to the said company the full price realized from the sale thereof as the said grain was sold, less the commission for making such sale, which commission was to be retained out of the price realized on the sale of such grain, and it was agreed that said Messmore, Gannett & Company should have and receive one-half cent per bushel as said commission, and as full compensation for their faithful services in making reports and remitting for all such sales; that pursuant to the terms of such contract, during the months of August, September, October, November, December, 1897, and the month of January, 1898, said Bird & Miller Grain Company shipped from Kansas City or elsewhere to the said Messmore, Gannett & Company of St. Louis, for the sale as aforesaid, a great number of cars of grain, to-wit, seven hundred and fifty cars, and that said Messmore, Gannett & Company on receipt of such cars sold the same for a large sum or money, to-wit, three hundred and seventy-five thousand dollars, and that the said Messmore, Gannett & Company did systematically and fraudulently make out and render to the said Bird & Miller Grain Company false and

fraudulent reports of the prices at which the grain was sold, and did pay to the said Bird & Miller Grain Company the amounts shown on such false and fraudulent accounts only about the sum of three hundred and sixty thousand dollars; that is to say, a sum less than the full amount of the proceeds of such sales by fifteen thousand dollars; that plaintiff states that by reason of the making of such false and fraudulent reports and remittances the said Messmore, Gannett & Company is not entitled to have and retain the commission or compensation stipulated by the terms of said contract between that company and the Bird & Miller Grain Company for the sale of such grain.

"The plaintiff states that the defendants and each of them conspiring and colluding together to cheat and defraud the said Bird & Miller Grain Company, and the creditors of said Grain Company, the said Grain Company being then insolvent and having an indebtedness of more than thirty thousand dollars, did after the assignment of the Bird & Miller Grain Company, as herein stated, receive and appropriate to their own use the said sum of fifteen thousand dollars.

"That thereafter, to-wit, on the eighteenth day of January, 1898, the said Bird & Miller Grain Company duly made an assignment of all its choses in action, property and effects of every kind and nature for the benefit of its creditors to one Joseph H. Roy; that said Joseph H. Roy thereafter, to-wit, February, 1899, resigned his said trust and the plaintiff herein, W. G. Haseltine, was thereupon duly appointed the successor in said trust as the assignee of the said Bird & Miller Grain Company by the circuit court of Jackson county, Missouri, and thereupon qualified as such, and now is, and ever since the last named date has been, the duly appointed assignee of the Bird & Miller Grain Company, with full authority and power to prosecute this suit.

"That the said defendants, and each of them by reason of the premises are justly indebted to the plain-

tiff in the sum of fifteen thousand dollars, which said sum they have failed and refuse to pay plaintiff, although thereunto requested, to plaintiff's damage in the sum of fifteen thousand dollars. Wherefore plaintiff prays judgment against the defendants for the sum of fifteen thousand dollars and costs of suit.''

The only answer of defendants was the admission that A. L. Messmore, John M. Gannett and T. B. Morton were partners as alleged in the petition, coupled with a general denial.

The evidence adduced at the trial tended to support all the allegations of the second count of the amended petition on which the trial was had; that is, the due appointment and qualification of the plaintiff as assignee of the Bird & Miller Grain Company; that defendants, Bird and Miller, prior to the assignment had been partners as charged in the petition under the name and style of Bird & Miller Grain Company; that the original defendants, Messmore, Gannett and Morton, were partners as charged under the style of Messmore, Gannett & Company; the subsequent appointment of defendants J. L. Messmore and Scudder as executors of the estate of defendant, A. L. Messmore; the terms of the agreement between Bird & Miller Grain Company and Messmore, Gannett & Company relative to the shipment, sale, accounting for and remittance of the proceeds of sales of grain, less a commission of half a cent per bushel, as stated in the petition; that pursuant to such agreement the Bird & Miller Grain Company shipped to Messmore, Gannett & Company at St. Louis within five months, seven hundred and eighteen cars of grain consisting of 501,219 bushels which were received by the firm of Messmore, Gannett & Morton, and sold by them on the market at St. Louis; that there was an arrangement between the parties and the Wabash railway, whereby the railway company was to rebate and pay four cents per hundred pounds on all the grain so shipped; but this rebate was to be collected by the firm of Messmore, Gannett & Morton, the

amount of which was $12,029.24; that the amount re-
tained from the proceeds of sales as commission on the
deal by Messmore, Gannett & Company was $2,506.

The jury under the evidence and instructions of
the court rendered a verdict in favor of plaintiff in
the sum of twelve thousand, five hundred and eighty-
four dollars and ninety-one cents.

The court thereafter required the plaintiff to re-
duce the verdict by remittitur to six thousand, eight
hundred and thirty-five dollars, and then rendered
judgment in favor of plaintiff for that sum.

After unavailing motions for new trial and in ar-
rest by appellants, they bring the case to this court
by appeal.

Plaintiff has filed in this court a motion to dis-
miss this appeal upon the ground that the court is
without jurisdiction of this cause, as the record does
not show an affidavit for appeal to have been made and
filed in this cause in the manner and form required by
the statutes of this State to perfect an appeal.

It appears from the record that on the fifteenth
day of May, 1901, a judgment was rendered in the trial
court in favor of plaintiff for the sum of $12,584.91.
That on the eighteenth day of May, 1901, at the same
term of said court appellants filed their motions for a
new trial, and in arrest. The motion for new trial was
sustained upon the ground that the damages assessed
by the jury were excessive. Thereafter, on November
23, 1901, of said October term, 1901, plaintiff filed his
motion in said cause to set aside the order theretofore
made sustaining defendants' motion for new trial, and
to allow plaintiff to enter a remittitur upon the amount
of the verdict for causes therein assigned. This motion
was sustained on January 3, 1902, at said October term,
1901, and, the order setting aside the order of the court
granting defendants a new trial sustained, and on the
same day the plaintiff voluntarily remitted $5,749.91,
and judgment was then rendered in favor of plaintiff

for the sum of six thousand, eight hundred and thirty-five dollars.

Plaintiff admits that on January 4, 1902, at the said October term, 1901, of said court, there was filed in said court by appellants an affidavit for appeal. Thereafter on January 8, 1902, of the October term, 1901, of said court, there was made upon the motion of appellants an order and judgment correcting and vacating the entries made on the third day of January, 1902, and in lieu thereof an order made as follows:

"This cause came on to be heard before this court upon the motion of said plaintiff heretofore filed herein, to set aside and vacate the order heretofore made herein, at the present term of this court, sustaining the motion of said defendants, Messmore, Scudder, Gannett and Morton for new trial of said action as to them, and to allow plaintiff to enter a remittitur upon the verdict and judgment thereon herein, and said motion was argued by counsel for both parties and later submitted upon written briefs and taken under advisement by the court and considered, and the respective parties being here present this day in court, the court informed counsel for plaintiff that the said verdict could not be sustained for more than six thousand, eight hundred and thirty-five dollars. And thereupon said plaintiff here, in open court, voluntarily offered to and did remit the sum of $5,749.91 from the amount of said verdict and judgment. Now, therefore, it is, upon motion of said plaintiffs, ordered that said order granting a new trial of this action be vacated and set aside, and that the motions for a new trial and in arrest of judgment heretofore filed by the defendants, John L. Messmore and William M. Scudder, the executors and personal representatives of the estate of A. L. Messmore, deceased, and John M. Gannett and T. B. Morton, are by the court now overruled, and the judgment heretofore originally entered herein at the present term herein, is now vacated. Wherefore, it is now further ordered,

adjudged and decreed by the court that the plaintiff
have and recover of and from the defendants herein
the sum of six thousand, eight hundred and thirty-five
dollars, with interest thereon at the rate of six per cent
per annum from this date until paid, together with all
their costs herein made and expended and have thereof
execution.''

Plaintiff's contention is that the affidavit for ap-
peal was clearly from the first judgment, and, as there
was no affidavit for appeal made or filed after the final
judgment in this cause was made and entered on Jan-
uary 8, 1902, or any affidavit for appeal directed to that
judgment, this court is without jurisdiction of this
appeal.

Section 806, Revised Statutes 1899, provides:
''Any party to a suit aggrieved by any judgment of
any circuit court in any civil cause from which an ap-
peal is not prohibited by the Constitution, may take
his appeal to a court having appellate jurisdiction . . .
from any final judgment in the case,'' etc.

But it seems to us that the judgments were prac-
tically the same, the only difference being in the
amounts, the first being reduced by remittitur upon the
motion of appellants themselves, and the last and final
judgment simply a modification in this respect of the
first.   The affidavit was on file, it is true, at the time of
the entry or modification of the last judgment in which
it is recited that the motion ''to correct the entries here-
in heretofore made on the third day of January, 1902, is
now taken up and heard and considered and is by the
court sustained and the entries herein made on said
third day of January, 1902, are now vacated and in lieu
thereof the following entries and judgments are upon
said motion of said defendants now made of record
herein by the court, viz.''—then follows the judgment.

So that it seems clear that the judgment of Janu-
ary 8 was intended as a substitute for the judgment of
January 3, to stand in its place and stead—and practi-

cally the same judgment, and for the purpose of the affidavit should be treated as such.

Defendants have also filed their motion to strike from the files plaintiff's additional abstract of the record upon the ground that it was not served upon them fifteen days before the cause was set for hearing as required by rule eleven of this court when a case is brought here by filing a copy of the judgment, order or decree in lieu of a complete transcript, as in this case. A copy of the additional abstract was served upon appellants on the eleventh day of April, 1904, while the cause was set for hearing on the eighteenth day of April, 1904, hence not within the time prescribed by the rule, but appellants made no objection to it until during the hearing of the cause on the nineteenth day of April, but treated it up to that time as if it had been served upon them in accordance with the rule and must be considered as having waived the time of service.

It is claimed by defendants that the court had no jurisdiction in this case of the persons of the defendants residing in the city of St. Louis.

The first count of the amended petition is based entirely upon fraud and collusion between the individual members of the firm of Bird & Miller Grain Company and of Messmore, Gannett & Company, prior to the assignment for the benefit of creditors, to defraud the Bird & Miller Grain Company and the creditors of said grain company. The second count of said petition alleges in effect that the Bird & Miller Grain Company during the period of six months beginning in August, 1897, and ending in January, 1898, shipped to the firm of Messmore, Gannett & Company (a firm composed of A. L. Messmore, J. M. Gannett and T. B. Morton), of St. Louis, 750 cars of grain, for the purpose of sale on the market of St. Louis.

It thus clearly appears that the first count of the petition is predicated entirely upon fraud and collusion between all of the defendants prior to the assignment

of the Bird & Miller Grain Company.

The second count proceeds upon the theory that the appellants fraudulently reported the proceeds of sales, in consequence of which they forfeited their commissions, and that after the assignment all of the defendants, conspiring and colluding to cheat and defraud the Grain Company and its creditors, appropriated to their own use the sum of money which it is alleged that Messmore, Gannett & Company fraudulently withheld from plaintiff's assignor, amounting to fifteen thousand dollars, for which plaintiff asks judgment.

It will be observed that the defendants are charged with joint liability, upon the theory of fraud and collusion perpetrated, according to the allegations of the first count, before the assignment, and under the allegations in the second count after the assignment. The case was tried upon this theory.

That there was no joint liability between Bird & Miller Grain Company or its individual members, and Messmore, Gannett & Company, is too plain for argument and it is only when there is such joint liability that an action can be maintained against the parties jointly. Instead of the defendants being jointly liable in this action, there was no liability upon the part of Bird and Miller and the other defendants, and nothing whatever upon which to bottom the contention that plaintiff, as the assignee of the Bird & Miller Grain Company, could maintain this action. Even if it were true that Bird and Miller had conspired with the other defendants to defraud Bird & Miller Grain Company, of which they were the only members, and its creditors, plaintiff cannot maintain this action against them, because that would in effect be the company suing itself, as plaintiff succeeded by the assignment only to the rights and interest of his assignor, the Bird & Miller Grain Company, and would in effect, though indirectly, be the company suing itself.

Plaintiff acquired by the assignment just such

rights, and no more, as were possessed by his assignor, the Bird & Miller Grain Company, a copartnership composed of Miller and Bird (Peet v. Spencer, 90 Mo. 384; Gregory v. Tavenner, 38 Mo. App. 627), and it will not be contended that the company could have sustained an action against them under the circumstances in this case, because they were the same persons and could not sue themselves, and of course the assignee could not do so.

Moreover, all of the transactions between Miller and Bird with the other defendants were by them as a company and not as individuals.

But notwithstanding the fact that the petition fails to state a cause of action against Steele M. Bird and Frank L. Miller, the only members of the company, they suffered judgment to go against them by default, after which the plaintiff dismissed his action against all of the defendants as to the first count in the petition. This would seem to indicate that Bird and Miller were made parties defendant for the purpose of conferring jurisdiction of the case upon the circuit court of Jackson county in order that process might issue against the other defendants to the city of St. Louis where they resided, requiring them to appear and defend the suit in Jackson county.

Section 562, Revised Statutes 1899, as far as necessary to quote it, declares that: "Suits instituted by summons shall, except as otherwise provided by law, be brought: First, when the defendant is a resident of the State, either in the county within which the defendant resides, or in the county within which the plaintiff resides and the defendant may be found."

It was held in the case of Graham v. Ringo, 67 Mo. 324, that where two persons who are not jointly liable are joined as defendants in one action, if one of them resides and is served with process in a county other than that where the action is brought, the court acquires no jurisdiction over him; and if the misjoinder appears

from the face of the petition, the question of jurisdiction may be raised after judgment.

That a plea to the jurisdiction before judgment is not necessary: Capital City Bank v. Knox, 47 Mo. 333; Marsh's Admr. v. Bast, 41 Mo. 493; Byler v. Jones, 79 Mo. 261.

That the court did not acquire jurisdiction of the defendants, other than Bird and Miller, by the service of process, we think clear.

The next question is, did they waive the service of process and the court acquire jurisdiction over them by their appearance to and defense of the suit?

At the October term, 1900, on October 17, the appellants filed a general demurrer, which was overruled on October 20, 1900.

On October 22, 1900, at the same term of court, they filed an answer in the nature of a general denial, in which answer no question was raised as to the jurisdiction of the court, either over the subject-matter of the suit, or of the person of any defendant. The record discloses that they appeared generally in the taking of depositions, and upon application to produce papers and at the trial of the cause. The record is entirely silent as to any pleading on their part, or ruling of the court, upon any objection of the appellants involving the question of jurisdiction of the court over them. They requested no instruction of the court directed to the jurisdiction of the court or the motives of the plaintiff in framing his petition. They did not raise the objection that the petition did not state a cause of action as to them as distinguished from the other defendants, the only objection in that respect being that "the petition does not state facts sufficient to constitute a cause of action."

It was held in the case of Sheehan & L. T. Co. v. Sims, 36 Mo. App. 224, that a plea of privilege, on the ground that the defendant was a non-resident, and was served with process when in attendance on the trial of

a cause in the circuit court in this State, wherein he was the sole defendant, is not available after the defendant has appeared by counsel in the action, has filed a demurrer to the petition on the grounds other than jurisdictional, has entered into a stipulation concerning steps in the cause, has appealed from a judgment against him and secured a reversal, and before answering an amended petition has given notice to take depositions.

In Callender v. Gates, 45 Ill. App. 374, it was held that a defendant who wishes to raise the question of jurisdiction, when a summons has been served upon him in a foreign country, must do so by a plea in abatement filed in due time, otherwise he will be considered as having submitted to the jurisdiction of the court.

In Fitzgerald M. C. Co. v. Fitzgerald, 137 U. S. 98, defendant was a corporation non-resident of the State in which the suit was brought. The court said:

"It is contended that the circuit court should have refused to proceed with the action if it appeared to its satisfaction that the service upon the defendant was obtained by means of a fraudulent device and trick; and that this question was presented by the plea to the jurisdiction, the motion for a nonsuit, the motion to dismiss, and a request, which was refused, for an instruction to the jury to render a verdict for the defendant, if they found from the evidence that the service was fraudulently procured and that the defendant had ignorantly acquiesced therein. . . . By its demurrer, petition for removal, answer and amended answer, and participation in the trial, the defendant waived all question of the service of process. And the record shows a resolution adopted by the defendant, authorizing the attorney who appeared for it 'to appear and represent this company as its sole attorney in all suits and proceedings at law or in equity now pending or which may hereafter be brought.' "

It would seem from these authorities that appel-

lants by appearing in various ways and upon the trial
waived the service of process upon them.

The next question for consideration is with respect
to the right of plaintiff as assignee to maintain this suit,
upon the ground that the defendants and each of them
conspired and colluded together to cheat and defraud
said Bird & Miller Grain Company and its creditors,
the said grain company being then insolvent and hav-
ing an indebtedness of more than thirty thousand dol-
lars, and said defendants did after said assignment of
the Bird & Miller Grain Company receive and appro-
priate to their own use the sum of fifteen thousand dol-
lars.

Plaintiff in his brief virtually concedes that an as-
signee could not, prior to the passage of the act of
March 15, 1897 (R. S. 1899, sec. 365), maintain an act-
ion of this character (Jacobi v. Jacobi,101 Mo. 507; Rid-
dle v. Norris, 46 Mo. App. 512; Parlin Orendorf Co.
v. Hord, 78 Mo. App. 279); but takes the position that
the authority of an assignee was enlarged by that act,
so that he now stands in the shoes of the creditors of
the assignor and in the shoes of a creditor having a
deed of trust or writ of attachment or execution levied
upon the property in question prior to the assignment,
and does not stand, as formerly, in the shoes of an as-
signee of the mere legal title with no more than the legal
title of the assignor. That section of the statute reads
as follows:

"Every assignee under the general assignment law
of this State is hereby declared to be a trustee for the
benefit of the creditors of his assignor. Any such as-
signee shall have the power and authority to prosecute
such actions for property and make such defense to
claims against the assigned property as a trustee in a
deed of trust, or an attachment or execution creditor
with a writ levied on such property, could prosecute
or make."

The authority of an assignee is simply enlarged by

this statute to the extent of authorizing him to prosecute such actions *for property* and make such defense to claims against the assigned property as a trustee in a deed of trust, or an attachment or execution creditor with a writ levied on such property could prosecute or make. But, this is not an action for property, nor is it a defense to a claim against assigned property, but is an action based upon fraud and collusion upon the part of defendants to cheat and defraud Bird & Miller Grain Company, and the creditors of said Grain Company, and in pursuance thereof, it is claimed they did receive and appropriate to their own use the sum of fifteen thousand dollars. In our opinion it has no application to this case.

Our conclusion is that the court erred in refusing appellants' instruction in the nature of a demurrer to the evidence and in overruling their motion in arrest.

The judgment as to appellants should be reversed. It is so ordered. All concur.